IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THE WORD SEED CHURCH, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 20-cv-4976 |
| | ) | |
| v. | ) | Judge Sharon Johnson Coleman |
| | ) | |
| VILLAGE OF HOMEWOOD, ILLINOIS, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Word Seed Church and Civil Liberties for Urban Believers bring this lawsuit against defendant Village of Homewood, Illinois, alleging violations of the equal terms, unreasonable limitations, and substantial burden provisions of the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc *et seq.* ("RLUIPA") and the Fourteenth Amendment's equal protection clause. Plaintiffs also challenge the relevant municipal ordinance as unconstitutionally vague. Before the Court is plaintiffs' motion for a preliminary injunction brought pursuant to Federal Rule of Civil Procedure 65(a). For the reasons set forth below, the Court dismisses this lawsuit without prejudice for lack of standing and denies plaintiffs' motion for a preliminary injunction.

**Background**

The Word Seed Church ("Church") is a seven-person congregation seeking to purchase property in the Village of Homewood ("Homewood") for the purpose of conducting religious worship and serving the community. The Church's congregation has been meeting at its pastor's home in Markham, Illinois for over two years. Civil Liberties for Urban Believers ("CLUB") is an unincorporated association of churches that exists to promote the religious liberty of urban churches. The Word Seed Church is a member of CLUB.

The Church alleges that its ability to obtain property in Homewood is substantially restricted due to Homewood's zoning ordinance that does not provide any place for the Church to meet freely as of right. To clarify, Homewood is divided into four residential districts, two public land districts, four business districts, and two manufacturing districts. Homewood's zoning ordinance specifies which uses are "permitted," "special use," or "not permitted" in each of the zoning districts. According to the relevant zoning ordinance, "[p]laces of worship are considered special uses in all districts." The ordinance also states that "[n]o special use shall be granted by the Village Board unless the special use:"

- Is deemed necessary for the public convenience at that location.

- Is not detrimental to the economic welfare of the community.

- Will be consistent with the goals and policies of the Comprehensive Plan.

- Is so designed, located, and proposed to be operated, that the public health, safety, and welfare will be protected.

- Is a suitable use of the property and, without the special use, the property will be substantially diminished in value.

- Will not cause substantial injury to the value of other property in the neighborhood in which it is located.

- Will be consistent with the uses and community character of the neighborhood surrounding the parcel.

- Will not be injurious to the use or enjoyment of other property in the neighborhood for the purposes permitted in the zoning district.

- Will not impede the normal and orderly development and improvement of surrounding properties for uses permitted in the zoning district.

- Provides adequate measures of ingress and egress in a manner that minimizes traffic congestion in the public streets.

- Is served by adequate utilities, drainage, road access, public safety and other necessary facilities.

- Will not substantially adversely affect one or more historical, archeological, cultural, natural or scenic resources located on the parcel or surrounding properties.

Further, the Church alleges that Homewood allows non-religious assembly uses without the need for a special use permit to art galleries, museums, restaurants, taverns, funeral homes, schools, parks, playgrounds, and public libraries. The Church seeks to enjoin Homewood from prohibiting it to locate anywhere in Homewood.

**Discussion**

*Standing*

Homewood first contends that the Church does not have standing to bring this lawsuit because it has not alleged an injury-in-fact. *See* 42 U.S.C. §§ 2000cc–2(a) ("Standing to assert a claim or defense under [RLUIPA] shall be governed by the general rules of standing under Article III of the Constitution."). To show standing for injunctive relief, the Church must establish: (1) it is under an actual or imminent threat of suffering a concrete and particularized injury-in-fact; (2) a causal connection between the injury and the challenged conduct; and (3) the likelihood the injury will be redressed by a favorable decision. *Cook County, Ill. v. Wolf,* 962 F.3d 208, 218 (7th Cir. 2020); *Church of Our Lord & Savior Jesus Christ v. City of Markham, Ill.,* 913 F.3d 670, 680 (7th Cir. 2019).

Here, Homewood specifically argues that the Church cannot establish injury-in-fact because the Church has yet to apply for a special use permit to locate in Homewood. In support of its argument, Homewood relies on a Seventh Circuit equal protection case decided ten years before the passage of RLUIPA. *See Love Church v. City of Evanston,* 896 F.2d 1082, 1086 (7th Cir. 1990). In *Love Church*, the Seventh Circuit concluded that the church's "speculative claims cannot constitute distinct and palpable injury for purposes of standing" because it "relie[d] on the mere possibility that, absent the Ordinance, it could have more easily acquired rental property in Evanston." *Id.* As is the case here, Love Church never applied for a permit to locate in Evanston.

3

In response, the Church argues that RLUIPA negates the holding in *Love Church* because Congress intended to extend legal protections to the present circumstances. Specifically, the Church contends that RLUIPA only requires that religious entities *intend to use* real property to bring a claim. The Church supports this argument by pointing to RLUIPA's definition of religious exercise, which states "[t]he use, building, or conversion of real property for the purpose of religious exercise shall be considered to be religious exercise of the person or entity that uses or *intends to use* the property for that purpose." 42 U.S.C. § 2000cc-5(7)(B) (emphasis added). The definition of religious exercise, however, does not confer standing because "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1549, 194 L.E.2d 635 (2016). To clarify, "[b]ecause the injury-in-fact requirement is rooted in Article III, Congress cannot 'statutorily grant[ ] the right to sue to a plaintiff who would not otherwise have standing.'" *Crabtree v. Experian Info. Sol., Inc.*, 948 F.3d 872, 877 (7th Cir. 2020) (citation omitted). The Church's other arguments concerning Congressional intent and the present circumstances are equally undeveloped and not supported by controlling authority.

In any event, unlike *Love Church* where the church's standing allegations lacked specificity, here, the Church alleges that it was under contract in the summer of 2020 to purchase property in Homewood, but that the seller refused to include a zoning contingency in the contract. In further support of establishing injury-in-fact, the Church also asserts that it has suffered financial losses because it spent attorney's fees to negotiate and draft the agreement to buy property, even though the seller backed out. The problem with these alleged injuries is that this lawsuit challenges Homewood's conduct in promulgating the ordinances, not the third-party seller's conduct in rejecting the real estate transaction. The closest the Church comes to establishing that Homewood

4

caused these injuries is that the Church cannot petition for a special use permit until it has a right of ownership in property pursuant to the Homewood ordinance, but if sellers refuse to include a zoning contingency in the contract, the Church cannot purchase property. This chain of causation, however, is too attenuated to confer standing because it relies on the independent action of a third-party. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (injury-in-fact must be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.") (citation omitted). Thus, at this juncture, the Church has failed to establish it has standing to bring this lawsuit against Homewood.

Nonetheless, the Court turns to whether the Church has shown that it is entitled to injunctive relief for the sake of completeness.

*Preliminary Injunction*

A "preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." *Orr v. Shicker*, 953 F.3d 490, 501 (7th Cir. 2020) (citation omitted). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 762 (7th Cir. 2020) (quoting *Winter v. Natural Res. Defense Council*, 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.E.2d 249 (2008)). The Court turns to whether the Church has established that it would suffer irreparable harm without injunctive relief because it is dispositive. *Whitaker v. Kenosha Unified Sch. Dist.*, 858 F.3d 1034, 1045 (7th Cir. 2017) ("[H]arm is considered irreparable if it 'cannot be prevented or fully rectified by the final judgment after trial.'") (citation omitted).

First, the Church maintains that it need not establish irreparable harm under the circumstances. More specifically, relying on a Ninth Circuit case discussing the Tax Equity and

5

Fiscal Responsibility Act, the Church argues that because RLUIPA specifically authorizes the United States to enforce the statute by bringing an action for injunctive relief, *see* 42 U.S.C. § 2000cc-2(f), the Church need not establish specific irreparable injury to obtain a preliminary injunction. *See United States v. Estate Preservation Serv.*, 202 F.3d 1093, 1098 (9th Cir. 2000). Indeed, when a governmental entity seeks a statutory injunction, it need not establish irreparable harm. *See United States v. Kaun,* 827 F.2d 1144, 1148 (7th Cir. 1987) ("In an action for a statutory injunction, once a violation has been demonstrated, the moving party need only show that there is a reasonable likelihood of future violations in order to obtain relief."). The Church, however, is a private entity seeking injunctive relief under Rule 65(a), and thus it must establish the traditional preliminary injunction requirements.

Next, the Church maintains that the loss of First Amendment freedoms constitutes irreparable harm. In a general, this is an accurate statement of law. *See Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). The protections under RLUIPA and First Amendment, however, are not identical, and the Church does little to explain how the ordinance affects its religious exercise. Instead, the Church makes the conclusory argument that it will lose assembly, worship, ministry opportunities, and membership if it does not move from its pastor's home. Missing from this explanation is how unpurchased (and unknown) property in Homewood is important to the Church's religious mission and beliefs. *See River of Life Kingdom Ministries v. Village of Hazel Crest, Ill.*, No. 08 C 0950, 2008 WL 4865568, at *12 (N.D. Ill. July 14, 2008) ("when a religious plaintiff makes a Free Exercise challenge to a zoning regulation, it must explain in what way the inability to locate in the specific area affects its religious exercise.") (citation omitted) (Gottschall, J.). The Church's irreparable injury argument is thus unavailing.

6

Last, irreparable harm means "more than a mere possibility of harm." *Whitaker,* 858 F.3d at 1045. More specifically, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Orr*, 953 F.3d at 502 (citation omitted). As discussed, Homewood has yet to deny the Church a special use permit, and the Church has only offered speculation as to its irreparable harm. Without more, the Church has not met its burden in establishing that injunctive relief is warranted at this time.

**Conclusion**

For these reasons, the Court dismisses this lawsuit without prejudice for lack of standing and denies plaintiffs' motion for a preliminary injunction [5]. Civil case terminated.

IT IS SO ORDERED.

Date: 11/16/2020

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge